IN   THE  UNITED  STATES  DISTRICT  COURT
FOR  THE  DISTRICT  OF  WESTERN  TEXAS
DELRIO  DIVISION


LUIS  FELIPE  RODRIGUEZ

PETITIONER

V.

UNITED  STATES  OF  AMERICA

RESPONDENTS

CASE NO.2:14-cr-00139-AM-1
MOTION PURSUANT TO ADDENDUM
OF 28 U.S.C.2255 MOTION
FOR GOOD CAUSE IN THE
INTEREST OF JUSTICE


## MOTION

COMES NOW PRO SE PETITIONER and request that this court hold his pro se brief to a les stringent standard than one prepared and filed by a seasoned lawyer.See Thomas v. Eby,841 U.S.434,440(6th Cir.2007):Haines v. Kerner,404 U.S.519-21(1972).In suport of the present grounds for relief movant asserts the following.


## CASE HISTORY

Petitioner Luis Felipe Rodriguez was sentenced to life imprisonment for distribution of 5 Kilograms or more of cocaine and conspiracy in violof 841,851 of the controled dangerous substance titles 21 U.S.C.841 & 21 U.S.C.851,in a trial by jury.


(I)                      STANDARD OF REVIEW

A prisoner in custody of the district court claiming the right to be released upon the ground  (1) that the sentence was imposed in violation of the laws of the United States Constitution or the laws of the district of Texas(2) the court  without jurisdiction to impose the sentence(3) the sentence was in excess of the maximum authorized by law (4) the sentence  is otherwise subject to collateral atacll may

*Cover page*

pg.2

move the court to vacate,set aside, or correct the sentence.

## STANDARD OF REVIEW
## INEFFECTIVE ASSISTANCE OF COUNSEL
## CLAIMS FOR RELIEF

The Sixth Amendment right to counsel "attaches"with the filing of formal criminal charges,and extends to all "critical stages" of the proceedings.Moran v. Burbine,475 U.S.412(19086): Michigan V. Jackson,475 UY.S.625,629 n.3(1986):Scott v. Illinois,440 U.S. 367(1979):Coleman v. Alabama,399 U.S.1 (1970):Dew v. United States 558 A.2d.1112,1113-18(.C.1989):Strickland v. Washington,466 U.S. 686(1984)(quoting McMann v. Richardson,397 U.S.759,771 n.14(1970).

## CLAIMS FOR RELIEF

1. Counsel failed to protect petitioner against conviction for in sufficientt evidence of the charged offenses.  See Strickland v. Washington, 466 U.S.688,690(1984); And proof beyond a reasonable doubt instruction to the jury that protects the accused against conviction except upon proof beyond a reasonable doubt.Due process Clause protects the accused. Francis v Franklin(1985);In re Winship (1970).That  in Simpson v.Matesanz,29 F.Supp.2d 11(D.Mass1998) the instruction stated that the jury must be sure of defendants guilt to a"moral certainty" of same degree jurrors used to malle "decisions of importance" in  their own lives,and stated that jurrors should give defendANTS BENIFIT OF THE DOUBTif they had any "serious unanswered questions"about his guilt.The defective reasonable doubt jury instruction was held to be a structural defect"which defies analysis by"harmless error" and required granting federal habeas corpus relief.
2.  Counsel ineffective for not advesarly challenging the governments case.The drug quantities,qualities of supposed siezed drugs. Chain of custody,chain of evidence of specified amounts of drugs.See United Stuates v.Noel,708 F.Supp.177(W.D.Tenn,1989).That defendant shall be provided an opportunity to test and analyse the alleged controlled substance by a qualified,independent expert selected by the defendant Id. The Noel Court ....noting the graveman of the indictment against the defendant rested upon  the alleged drug being a narcotic

pg.3

within the provisioons of the United States Code held that the def-
endant was entitled to ,have an independent test performed on the
alleged narcotic.Furthermore the district court :admonished that
the defendant should not be limited to cross-examination  of the
governments expert on such a pivitol determinative fact."Id..

3. Counsell ineffective for not reviewing police lab reports.
See Torro v. Fairman,940 F.2d. 1065(7th Cir.1991);Tucker v. Dun
cann,158 F.3d 449(9th Cir. 1998)U.S. v. Myers 892 F.2d 642 (7th
Cir.1990);Goodwin v. Balkoem 684 F.2d 794 (11th Cir.1982).

4. Counsel failed to request acquittal after trial rule 29.See
Stricklan d v. Washington,466 U.S.688,690(1984);Jiminez v. U.S.
258  F.3d 1069(9th Cir.2001)(U.S.v.Cruz,127 F.3d 791,795(9th
Cir.1997).

5. Counsel failed to challenge the cell phone usage that initiated
the investigation  into the drug conspiracy petitioner was/is be-
ing accused of participating in.Moreover that the phone records
seized in violation  of the 4th Amendment can not be used in  the
present case because not only were the conversations:outside of the
U.S. they were illicitly utilized by and through the radius limit-
atitions perscribed within  the so called affidavits by the govern=
ment agents.And the numerous violations of said usage that counsel
never challenged these illicit cell phone violations by the gov-
ernment.See Carpenter v. United States,*Brady v. Maryland,Jenks Ma-
terial. Counsels faiure to advesaraly challenge these numerous viol-
ations prejudiced petitioners opportunity at a fair trial.

6. Counsel failed to challenge the cell phone tapping,and illicit
cel site locations and affidavits ¤needed to retrieve cell comm-
unications to indictment:See Carpenter v. United States,(2015)

7. Counsel failed to advesarly challenge statements and testimony
from government witnesses turned government agents.That there can
exsist no conspiracy between a government agent and a defedant.See
Sears v. United STates,(5th Cir.1965):United States v.Pennell,737
F.2d521-536-37(6th Cir.1984).Counsel failed instruct the court and
jury about SEars Rule objection.This prejudiced petitioners oppor-
tunity at a fair trial.

8. Counsel inefeective for protecting defendant from the govern-
ment illicit usagages of uncorroborated,illicit information that
defendant never had dominian or constructive spossession of any
drugs,ever.No proof beyond reasonable doubt was ever established e-
concerning defendant.

PG.4

There were no drugs,or affidavits in  support of drugs confiscated by
or from  defendant that there were none confiscated from  him at all.
See Strickland v. Washington,466 U.S.688,690(1984).Brady v.Maryland,
373 U.S.83(1963).

9. Counsel failed to establish a realistic defense strategy for defen-
dant at trial.See Striklands v. Washington,466 U.S.688,690(1984);
Descamps v. United STates,June 17,2013:Chain  of evidence,chain of
custody of drugs seized from  perspective individuals and dwellings.

10. Counsel ineffective for having to many cumulative errors Taylor v
Kentucky,436 U.S.478,n.15,98 S.Ct.1930,56 L.Ed 2d 468(1978).Strickian

(1984).

ALSO   SEE ALSO ATTACHED EXHIBIT PAGES SUBSTANSIATING

all of petitioners allegations at law claims for relief

PG. 5

That the 4th,and 5th Amendment violations probable,And Equal Protect-
ion under the law of the 14th Amendment.See also Strickland v. Wash-
ington,466 U.S.688,690(1984);Brady v. Maryland,473 U.S.83(1963).Th-
at had this evidence been utilized at the outsett of the case the
outcome would have beren different.Enough to unmdermine confidence
in the prosecutions case.Not only was there no probable cause hear-
under oath in front of a Magistrate or Judge but the Indictment can
not be relied upon as being a True Bill of Indictment. Moreover th-
at challenges to the grandjury,its particulars and the voire dire ar-
raingment should have been done by counsel to insure that the grand-
jury testimonies and the particulars were in  order that challeges
can and should be made within that seven day opportunity for dis-
missal according to Rule 6 and 6(f) and the violation  of grandjury
procedures as noted by and  through grandi jury particulars.Also the
Supreme Court Annouced iNew Case Law,Rule previously Unavailable the
at is applicable to appeallants present case in  Blakely v. Wash-
ington,542 U.S.296,159 L.Ed 2d 403,124 S.Ct.2531(2004):See also Ca-
rpenter v. United States,819 F.3d 880(CA2016)(enbanc):United States,
[Foote Note]
v. Davis,(CA 2015)(138 S.Ct.2227).Warrant did not sustain,sufficient
information contained in affidavit or lack therof for probable cause
basis to search or seize evidence against defendant.Within this
motion contains sufficient evidence to persuade this honorable cou-
rt to have a hearing to resolve the matter at law,and has shown a su-
bstantial right as announced in  the Supreme Court in  Barefoot v.Es-
telle,463 U.S.880(1983) and the aforementioned case law also annou-
ced also in this present brief.And  that apppeallant doesnot have to
show or require a showing that the (COA) will succeed but that reas-
onable jurist could debate whether (or for that matter,agree that)the
petition should have been resolved in a different manner or that the
issues presented were adequate to deserve en couragement to proceed
further;Slack v. McDaniel,529 U.S.[473]at 484(200)(quoting Barefoot
supra at 893,n4)Thus the (COA)determination requiers an overview of
the claims in the Habeas petition and a general assessment of their
merits, [FooteNote]

VI.

understanding was reflected in  contemporaneous court decsions and tr-
eaties.Supreme Court overuled Harris endorsing Apprendi which would
erase the anomaly rule to  mandatory minimum sentencing at issue in
petitioner   present case among the numerous cumulative 6th Amendment
violations by defense counsel.Strickland at U.S.466.Apprndi v.New
Jersey, 530 U. S. 466.Therefore petitioner submits this present br-
ief and Addendum in  support of his allegations at law claims for re-
lief in  this present 2255 motion.Therfore petitioners avers that it
would benfit the court to have an evidentiary hearing to resolve the
matter at law to have a meaningful review of the claims presented to
not arbitraly dismiss the present applicable allegetions at law to
insure that justice is served in  the finality of the ends of Just-
ice. So Prays petitioner.

Respectfully

*Luis Felipe Rodriguez*

CERTIFICATE OF SERVICE

ON THIS DAY OF *November 28* 2019.I SENT A COPY OF THIS MOTION TO
THE CLERK OF THE COURT.

Respectfully

*Luis Felipe Rodriguez*

ARGUMENT

I. .

Comes Now pro se petitioner Luis Felipe Rodriguez and request that this court recognize all of his claims for relief,allegations at law in conjunction with this present writ of habeas corpus and 2255 motion addendum to the present 2255 motion already before this court.That movant, pursuant to rule 52(1) is requesting that this court is required under law to "find the facts specifically and state its conclusions of law seperately."See Rule 52(1) FRCIVP.And to advise the litigant of any factual ba_sis for its decision and permit informed appellate review." Id.Rule 52.Also see;Bradley v. Milliken,772 F.2d. 266,272 (6th Cir. 1985):Gonzales v. Galvin,151 F.3d.526(6th Cir.1997).The Sixth Circuit has held that rule 52(a) applies to a district courts finding of fact and law in 2255 cases.See Guerro v. United States,383,f.3d 4-09 411-12(6th Cir.2004).

Petitioners writ raises a prima facie showing that the advesarial process in petitioners case broke down and that the attorney was not functioning as an effective assistance of counsel as guranteed by the 6th amedment of the constitution.See also Strickland v. Washington,46-6 U.S.668,672(1984):Moran v. Burbine,475 U.S.412(19896);Michigan v. Jacvkson,475 U.S.625,629 n.3(1986).,Moreover that the information provided by the government is based upon fraudulant,inaccurate,puported non-exsistent infamous drug crime. That the original indictment is inaccurate in violation of the indictment procedures,grandjury petit, grand jury voir dire and probable cause hearing procedures that initiate probable cause for arrest and indictment.See 28 U.S.C.1862,Section 1861 Section 1867.Furthermore petititioners counsel was ineffective for not challenging the indictment or attempting to quash it for any deficiencies within the indictment. I n Section 1867 in  criminal,cases before the voir dire examination begins or within seven days after the defendant discovered,by the exercise of diligence, the grounds therefor; which ever is earlier,the defendant may move to dismiss the indictment or stay the proceedings against him on the groundss of substantial failure to comply with the provisons of this title in selecting the grand jury.Id.(emphasis supplied); Pursuant to 28 U.S.C.1862.

ARGUMENT CONTINUED
II.

A person in federal custody can challenge any grand jury irregular-
ities or the grandjury voir dire and particulars within that seven day
period of time on the grounds of procedural irregularties.Or a person
in federal custody.The defendant must allege a substantial failure to
comply with 28 U.S.C.1861 et.seg. By and through counsels deficient pe-
rformance and negligence to examine the indictment process and proce-
dure. Prejudice petitioners opportunity at a fair trial and a fair re-
sult in  his trial and court proceedings.See Strickland v. Washington,
466 U.S.688,690(1984);. The Fifth Amendment states that no person  sh-
all be held for capital or otherwise infamous crime unless on present-
ment of indictment by the grandjury.Sixth Amendment in pertinent parts
to be informed of the nature and cause of the accusation or exposed to
an eigth amendment violation of cruel and unusual punishment.That th-
ere exsist no true bill of indictment applicable to petitioners  pre-
sent case.That the elements of said indictment are not all included
to convict or prosecute petitioner.Therefore the Judgement is void
and movant should be immediately released and his conviction overtur-
ned and dismissed. See Davis v. Unitede States,417 U.S.333,342,41 L.
ED.2d.109,116,94 S.Ct. 2298(1974);Sanders. v. United States,373 U.S.1
10,L.Ed.2d 148,83 S.Ct.1068(1963);Kaufman v. United Staes,394,U.S.217
230,22 L.Ed.2d.227,89 S.Ct.1068(1963).

Where the court held that the procedure in the above mentioned cases
were defective in the grand jury and indictment was also defective and
there exsist no information supported by oath or affirormation and th-
at there exsist no probable cause hearing that was conducted in open
court before a magistrate or judge to procure a true bill of indict-
ment applicable to petitioners case.Also the court appointed counsel
was deficient in not protecting movant from  a 4th and 5th Amend-
ment violations of unreasonable searches,seizures due process,equal
protection  under the law that prejudiced petitioners opportunity at
a fair court proceeding,fair trial.Or a substantial defense at trial.
See In re Winship,397 U.S.358,354,90,S.Ct. 1068,25 L.Ed.2d.368(1970);
Francis v. Franklin,471 U.S.307,30-,105 S.Ct.1965,85 L.Ed.344(1985).

PAGE III ARGUMENT

That the court appointed lawyer allowed the prosecution to utilize illicit statements of unrelated crimes of co-defendants turned government agents by and through their uncorroborated testimonies, that counsel failed to subject to meaningful advesarial testing to impeach or challenge the illicit truthfulness of the statements being made against the defnedant. See Brady v. Maryland, 373 U.S.83(1963): Franks v. Deleware, 438 U.S. 154, 98 S.Ct.(1978); Giglio v. United States, 405 U.S. 150 S.Ct.763(21972); Naupe v. Illinois, 360 U.S. 264 S.Ct.1173(1959); Bagley v. United States, 473 U.S.667(1985). Furthermore the court appointed lawyer failed to file the adequate motions to recieve the relevant Jenks Material setting forth the governements obligation to disclose prior in formation, statements of governement witnesses for impeachment purposes applies to suppression hearings. See 18 U.S.C.3500 (b)(2006) relates to p statement of witnesses in possession of the U.S. government. That relate to subjects testified to by witnesses on(direct examination). Fed. R.Civ.Proc.26.2(g) extending requirement to supression hearing D.C.Super.Crim.Proc.26(g) same Franks, Giglio, Brady, Bagley, Naupe, Agurs; Counsels failure to protect the defendant against alleged statements prejudiced petitioners opportunity to a fair trial, fair court proceedings. This failure by defense counsel not challnge the trustworthness of the witnesses against defendant and the failure to abstract critical testimony for defnedant constituted inefective assistance of counsel and to request a limiting instruction form the court about these fraudulent testimonies of the conspiracy theory the prosecution used as a strategy to convict defendant. Counsels failure exposed movant to a 5th Amendment violation 6th and 14th Amendments to the Constitution of the United States. See also Arrowood v.Closen, 732 F.2d 1364(7th Cir.1984); Wayne v. Morris, 469 U.S.908, 83 L.Ed 2d.218, 105 S.Ct.282(1984). Thus in the aforementioned litigation of ineffective assistance counsel claims and grand-jury violations of the grand jury petit, particulars of Section 18 U.S.C.3045 and rules 3,4, and 6of the Federal Rules of Criminal Procedure(Federal Rules)and Fourth Amendment, is that the procedure in this case was defective"there exsists no affidavit of criminal

## ARGUMENT IV.

complaint or information supported by oath or affirmation;and that
no probable-cause hearing was conducted in open court before a mag-
istrate judge.And that there exsists no true bill of indictement
signed by the foreperson upon review and completion of the grand-
jury procedure,that must be adhered to by and through due process
of the fifth amendment,equal protection under the law of the 14th
amendment of the U.S.Constitution.The Statutory and Constituional
inadequacy of grand jury procedures prejudiced movant opportunity
at a fair trial,a fair court proceeding/exposing petitioner to an
8th amendment  violation of cruel and unusual punishment,harsher
punishment and a 6th amendment violation  of ineffective assist-
ance of counsel.See Strickland v. Washington,466 U.S.688,690(1984).

By and through counsels defective,neglegent,non-advesarial chall-
enges to the prosecutions case,prejudiced movants opportunity at
a fair trial.Due process requires reversal of the conviction if
there is a reasonable probability that,had the defense utilized
this/evidence the result of the proceeding would have been diffe-
erent.That a reasonable probability is a probability sufficient
to undermine the outcome.United Statesv. Bagley,473 U.S. 667(19-
85);United States v.Agurs,427 U.S.97,111(1976).This standard app-
lies whether the favorable evidence is directly exculpatory,or may
be used to impeach government witnesses who testified at trial.Id.
at 676(inducements offered to informants who testified at trial).

See generally supra Chapter 5, Section II. This mitigating evid-
ence that should have been adresed by counsel at trial and on
appeal and those courts also.This violated movants equal protect-
ion  under the law and  his  due  process rights.That the trial
can not be relied upon  as having produced a just result.See Stri-
ckland v. Washington,466 U.S.688,690(1984);Brady v. Maryland,
373 U.S.83(1963).  Also petitioner contends that the sentence ex-
ceeds the maximum allowed by law.That the 6th Amendment right to
a jury trial should be the fact finder in adjudicating the maxi-

ARGUMENT V.

mum  and mandatory minimum sentence for a crime is permissable und-
er the Sixth Amendment. The Fourth Circuit confirmed agreeing that
at Alleynes, objection was foreclosed by Harris. Supreme Court he-
ld: The judgement is vacated and the case remanded.(1) Because the
mandatory minimum sentence increased the penalty for a crime,any
fact that increases the mandatory minimum is an element "that must
be submitted to the jury.(2) Accordingly Harris is overruled.See pg.
10-16 Alleyne Supreme Court decision. See also Apprendi v. New Jer-
sey530 U.S.466 concluded that any fact increasing the prescribed ra-
nge of penalties to which a criminal defendant is exposed "are ele-
ments of the crime.id at 484. Apprendis principle applies with equal
force to facts increasing the mandatory minimum,alters the prescri-
bed range of sentence to which a criminal defendant is exposed.Id.
at 490.Because the legally prescribed range is the penalty affixed
to the crime as in petitioners case the fact that the criminal sta-
tutes have long specified both floor andd celling of sentence range
is evidence that both define the legally prescribed penalty.Desc-
amps v. United States, which clearly difine the substantive  way to
apply these sentneces,predicate offenses,and enhancement that pres-
erve the jury"s historic role as an intermediary between State and
criminal defendants.United States v.  Gaudin,515,U.S. 506, 510-511.
The Sixth Amendment concerns if the trial court went beyond merely
identifying a prior conviction. That is why Shepard refused to pe-
rmit sentencing courts to make a disputed determination about what
facts must have supported a defendants conviction.544 U.S.at 25.
The Sixth Amendment right to trial "by impartial jury"in conjunc-
tion with petitioners right to due process clause requires that ea-
ch element of a crime be proven to the jury beyond a reasonable do-
ubt.Gaudin,515 U.S.at 510.There was a well established practice in-
cluding in the indictment,and submitting to the jury,every fact
that was the basis for imposing or increasing puishment. And this

CONCLUSION

In conclusion the court appointed lawyer allowed the prosecution to utilize unrelated crimes of co-defendants turned governemnt agents by and through their cooperation, with the government they became government agents also.See Sears v. United States, 343 |l.2d 139,142(5th Cir.1965)United States v. Pennell, 737 |l.2d 521-37(6th Cir.1984).That there can exsist no agreement between a government agent and an individual.Moreover that when an individual conspires to violate the law with one other person,and that person is a government agent there needs to be a non-affiliated party that has to have

conspired with the defendant to convict.Therefore to prove the defendant guilty beyond a reasonable doubt.In petitioners case all of co-defendants were given inducements to cooperate and turn into government agents.See Brady v. Maryland,373 U.S.83(1963): That counsel failed to challenge the government agents uncorroborated testimonies of unverified,non-exsistant schemes to reduce their own sentences in which they were caught by their own devices. And now they are attempting to eleviate their own duplicity in conjunction with placing any and all blame on the unassuming movant.Thus counsels failure to protect petitioner against such erroneous statements of uncorroborated testimonies that have no standing or can not be substantiated of a relevant nature,or participation of or by petitioner and that there exsists no conclusive evidence to substantiate his envolement in any way. That defense consel should have recognized these numerous violation's of movants 4th,5th,6th,8th,13th, and 14th Amendments to the U.S.Constitution.See Aslo Strickland v. Washington,466 U.S.688,690(1984);Brady v. Maryland,373 U.S.83, (1963). And in conclusion the court proceedings can not be relied upon as having produc  a just result.So Prays movant that this court vacate ,set aside or correct  in the interest of justice to prevent this ongoing miscarriageof justice to petitioners present case scenario.So Prays petitioner.

Resepectfully

*Luis Felipe Rodriguez*

pg. 2

## CONTINUATION CONCLUSION

In the case of <u>Veronica A. Martinez</u> not testifying where there was possible ex-culpatory information available.The test is whether the questioning party exhibited bad faith by calling a witness sure to be unhelpful to its case. See confrontation clause of the 6th Amendment to the Constitution.

The right to a meaningful confrontation means more than beyond or being allowed to confront a witness physically.A criminal defendant states a violation of the confrontation clause by showing that he was prohibited from engaging in otherwise appropriate cross-examination designed to show a prototypicaly form of bias on the part of the witness,and therby to expose to the jury the fact from which jurros could draw inferences relating to the reliability of the witness.Bias refers both to a witness personal bias for or against a party and to his or her motive to lie.Bias is always a proper subject of cross examination based upon witness bias.Thus to make cross-examination based upon witness bias effective (and thus satisfying the Sixth Amendment)defense counsel must make a showing and be permitted to expose to the jury to the facts from which jurrors could appropriately draw inferences relating to the reliability of the witness.A trial court ruling therefore infringes on the 6th Amendment right to confrontation when it precludes the defense from pursuing a line of examination that is neccessary to enable the jury to fully evaluate the witness credibility.It is not enough that the possibility of bias be mentioned counsel must be permitted to present the nature and extent of the bias.There are three components of a true <u>Brady</u> <u>Violation</u> the disputed information be(1) favorable to the defense and or accused either because it is exculpatory or because it is impeaching (2) suppressed by the governement"either willfully or inadvertenly (3)material <u>Stirckland</u>,527 U.S.at 281-82.Information is material when ther is a reasonable probability that had the evidence been disclosed the result of the proceeding would have been different.<u>United</u> <u>States</u> v.<u>Bagley</u>,473 U.S.667,882,105 S.Ct. 337,87L.Ed.2d 481(1985)

A reasonable probability of a different result occurs when the suppression "undermines confidence in the outcome of the trial"<u>Kyles</u>,514 U.S.at434(quoting Bagley 473U.S.at678)When the information is favorable,suppressed,and material,we must reverse irrespective of the good faith or bad faith of the prosecution.<u>Brady</u>,373 U.S.at 87.The burden is on the defense to prove.Petitioners <u>Brady</u> claim succeeds because he can show that the information is material that the drugs seized were not his,and he did not have dominion possession,or con - sructive possession of any drugs at any time. There were no search warants of any dwellings that the drugs were found at or in, that had his name on them.This witness could testify to those and other material facts that could would change the outcome of the present case.

PG.3 C.C.

Moreover there are numerous exculpatory information  that can,will change petitioners case.See Carpenter v.United STates,(2015)and that the information retrieved for searchwarrants by and throught nthe use of cell phone,cell tower cites was illicitly obtained and utilized,that all of defendants conversations, were the product of calls from outside the United States in  Mexico.Therefore can/not/should not have been used

to convict or illicit warrants with no real or true affidavits to tape conversations, or tapp cell sights/cell phones. That petitioner never had the opportunity to retrieve said documents,transcripts,informations for trial use before or during.This information  was not only witheld but suppressed from  the defense.ThisPlain Error standard of review governs claims unattenable and petitioners case should be reversed and vacated.So PRAYS PETITIONER.

Respectfully

*Luis Felipe Rodriguez*

CERTIFICATE OF SERVICE

AFFIDAVIT IN  SUPPORT OF PRESENT 28 U.S.C.2255/PURSUANT TO 28 U.S.C 1746 SWORN AFFIDAVIT

DECLERATION OF FACTS

I *Luis Felipe Rodriguez* being duly sworn and deposed say under penalty of perjury that I sign this document.That all of the litigation,information contained in this present brief are true and correct to the best of my knowledge and belief. I so Swear.

Respectfully

*Luis Felipe Rodriguez*

Case No: 2:14-cr-00139-AM-1

Luis Felipe Rodriguez

Reg # 63052-180

Attached

Exhibit

Pages

Exibits start from this pg. and on.

8-10-2019

## Physical Evidence Drug Quantities and Ghost dope quantities.

From my Pre-Sentence Report:

* 366.6 grams of methamphetamine (actual) seized from Jaime Armando Erail.

* 1.98 grams of cocaine seized from Robert Villarreal.

* 14.17 grams of cocaine seized from "Ray"

* 29 grams of cocaine seized from Gildardo Martinez

* 805.1 grams of cocaine seized from Santillanas Residence.

* 25 kilograms of cocaine which were transported by a witness for the defendant.
   * Jaime Armando Erail *

* 45.36 Kilograms of marijuana which were transported by a witness for the defendant.

↪ This specific drugs mentioned in trial were never actually caught in other word Ghost dope. And this were drug quantaties supposedly transported by Jaime Armando Erail, the same witness for whom I was aquitted in regards to the meth court.

Pg 1

11-12-2019

## Co-defendant Charges and Sentencing
from my PSR:

Jesus Baldemar Santillana - DR-CR-00873 (01)
name on a one count indictment filed on May
23, 2012 in the DelRio Division West District
of Texas. His indictment charged him with
Conspiracy to Possess with intent to distribute
Cocaine in violation 21 USC § 841 (a)(1) & (b)(1)(A) and
856. He is a fugitive.

Gildardo Martinez - DR-12-CR-00474 (01) sentenced
November 18, 2013 to 60 months 5 yrs supervised
release for Conspiracy with intent to distribute
more than 5 kilos of cocaine in violation of 21
USC 846. On January 27, 2016 Martinez, judgment
was amended to 44 months imprisonment 5 yrs
supervised release.

Veronica Alonzo Martinez - DR-12-CR-01327 (01) was
sentenced by the Court on October 16, 2013 to
63 month 5 yrs supervised release for Conspiracy
with intent to distribute more than 500
grams of Cocaine in violation of 21 USC § 846
On Febuary 11, 2016 martinez sentence of imprisonment
was reduced to 57 months.

Reynaldo Zamora DR-13-CR-00251 (02) was sentenced
December 10, 2015 to 41 months 3 yrs supervised release

Pg 2                                                                11-12-2019

## Co-defendant Changes and Sentencing

Jaime Armando Crail-SA-12-CR-0100(01) was sentenced by the united states district Court in San Antonio Texas on November 29 2012 to 108 months imprisonment and 4 years Supervised release for possession with intent to Distribute methamphetamine in violation of 21 USC § 841 (a)(1), On May 4 2015 Crail's sentence of imprisonment was later reduced to 97 months. On November 4 2015, Crail's judgment was amended to 57 months imprisonment and 4 years supervised release.

Concerning Jaime Armando Crail

Pg. #14 of my PSR.

Febuary 8, 2012 San Antonio, Tx Police officers "Assisted" with an investigation and conducted a traffic stop on Jaime Armando Crail which resulted in the finding of 366.6? grams of meth (actual) under the driver seat additionally detectives located .45 caliber semi automatic handgun with magazine on holster and 9 rounds of ammo Crail was questioned and admitted he was going to make a narcotics delivery. It was determined the meth possesed by Crail was obtained from Rodriguez

Rodriguez, Luis
Reg #: 63052-180
USP Canaan
P.O. Box 300
WayMart, PA. 18472

August 29, 2017

Javier Riojas
Attorney at Law
542 E. Main Street
Eagle Pass, Texas 78853

US v. Rodriguez, Luis
Dckt #: DR-14-CR-139(1)-AM

Dear M. Riojas:

Hope and Pray that when this letter Reaches your hands, you're in the best of health. As of My self I'm physically in good thanks to the Lord my God, but a little concerned about the following for which I am respectfully Requesting that you would send me copies:

1.) I would like to know the Respond the Court Made in reference to granting me verdict attorney. Please,

2) If you have submitted my Direct Appeal please send me copies of it so that I can go over it and if I wish for you to add any argument I will let you know. "Please send me copies of the Motion or Direct Appeal."

3.) Please send me copies of my Trial transcripts, My sentencing minutes and my Judgement of commitment as soon as possible because I really need them here.

Very truly yours,

Luis Rodriguez

Rodriguez, Luis

Reg #: 30502-180

Rodriguez, Luis
Reg#: 63052-180
U.S.P. Canaan
P.O. Box 300
Waymart, PA 18472

Oct 9, 2017

Javier Riojas
Attorney at Law
P.O. Box 2001
Eagle Pass, Tx 78853

U.S. v. Luis Felipe Rodriguez
Case No: 16-51368

Dear Mr. Riojas:

I would like to thank you for Re-sending me copy of the motion you submitted on August 11, 2017. I Received my copies on or about September 21, 2017.

As you should know by now, My family and I have been trying to contact you long before you submitted the Direct appeal motion, wanting you to please send me copies of my trial transcript, P.S.R documents, Judgment of Cnv, and Sentencing transcript in order for me to be able to give you my input and suggestions on the motion to file.

Please note, this is my second letter Respectfully requesting the above Mentioned Documents. Thank you in advance for your help & Understanding with this matter.

Sincerely

Rodriguez, Luis
Reg#: 63052-180
USP Canaan
P.O. BOX 300
Waymart, PA 18472

August 3, 2018

Javier Riojas
Attorney at Law
P.O. BOX 2001
Eagle Pass, TX 78852

U.S v Luis Felipe Rodriguez
Case No: 16-513

Dear Mr. Riojas:

I have recently found out that my direct Motion of appeal that you had submitted in August 11, 2017 has been denied. It is my understanding, that now that my motion was denied, you Mr. Riojas are no longer obligated to continue working on my case. This is why i want to thank you for your services. I will no longer require your services and will be hiring a new counsel. I am asking that you please withdraw from my case.

Now, since I will continue with my motions regarding my case through another counsel. I request from you all documents concerning my case, which I am certain that you posess since you have been my lawyer all this time. I will mention this legal documents to you specifically for I will remind you, I have ask before for most of this legal documents from you Mr. Riojas, for copies if I may correct myself, but I have received nothing of what I ask you for in a certified letter I sent to you on October 9, 2017. The only legal document concerning my case that I've received from you is the briefing of the direct motion of appeal. I thank you for sending me this last mention briefing

denied, I understand that you are no longer obligated to continue in my case. And I'm okay with that. As I have said in the beginning of this letter I will be hiring a new counsel to help me proceed with any and all other motions I will need to submit.

For this reason, I ask that you send me all the following legal documents: 1) First Indictment and Superseeding indictment, 2) Second Indictment and Second Superseeding Indictment 3) All my Trial transcripts, 4) P.S.R documents 5) Judgement of Commitment 6) Sentencing transcripts. 6) Governments reputal of direct appeal motion. 7) Your motion refutting governments response 8) The Courts Decision and order

Finally, I ask that you, being the God honoring Man you said you'd be in my case. That you help me fight my life sentence, simply by sending me all this documents that I'm asking for. Thank you for everything and

God Bless You.

Luis Rodriguez

CC1- District Court

CC2- Appeal Court

CC3- AUSA Joseph H. Gay. Jr.

LUIS FELIPE RODRIGUEZ
Register Number: 63052-180
USP CANAAN
U.S. Penitentiary
P.O. BOX 300
Waymart, PA 18472

Javier Riojas                                           ' April 18 2019
Attorney at Law
542 E.Main St
P.O BOX 2001
Eagle PASS, Tx 78853

<u>Request for Attorney File</u>

    I am in the process of putting together a complete copy of my
case records. I ask that you send everything to Leading Edge as soon
as possible, including but not limited to: any and all discovery
material, everything you have received from the court and government
on my behalf, and everything you have filed on my behalf.

    This should include but not limited to: law enforcement reports
search warrants and affidavits in support thereof, complaints and sup-
porting affidavits or statements, any and all other discovery material
that you have received, if there were items that you did not receive
but were reviewed on camera, I will need a brief description of that
as well.

    I also request transcripts of all trial/plea and sentencing
proceedings, along with the judgment and commitment order.

    I hereby give my permission to have all this material sent to:

Leading Edge
4606 F.M. 1960 W.
Suite 412A.
Houston, TX 77069

    Your time and consideration in this pressing matter is greatly
appreciated,

Luis Rodriguez
Luis Rodriguez

*MVM, Inc.*
*(713) 693-3241*

| | |
|---|---|
| CASE No: | **MD-11-0055** |
| TARGET No: | **830-758-9348** |
| CALL: | **0895** |
| MONITOR: | **S. KNOWLES** |
| TRANSCRIBER: | **M.   RUBIO** |
| INCOMING: | **830-335-8891** |
| SUBSCRIBER: | **UNKNOWN** |
| LOCATION: | **UNKNOWN** |
| DATE: | **MARCH 23, 2012** |
| TIME: | **16:18:59 - 16:18:59** |
| DURATION: | **00:00:00** |
| LANGUAGE: | **SPANISH** |
| PARTICIPANTS: | **LUIS FELIPE RODRIGUEZ AKA VAQUERO** |

*MVM, Inc.*
*(713) 693-3241*

2

**[BEGINNING OF MESSAGE]**

No viejon pero ya no deben tardar

NO "VIEJON" (OLD MAN) BUT IT SHOULD NOT BE MUCH LONGER.

**[END OF MESSAGE]**

*MVM, Inc.*
*(713) 693-3241*

| | |
|---|---|
| CASE No: | **MD-11-0055** |
| TARGET No: | **830-758-9348** |
| CALL: | **1560** |
| MONITOR: | **M. RUBIO** |
| TRANSCRIBER: | **M.   RUBIO** |
| INCOMING: | **830-335-8891** |
| SUBSCRIBER: | **UNKNOWN** |
| LOCATION: | **UNKNOWN** |
| DATE: | **APRIL 4, 2012** |
| TIME: | **16:04:37 - 16:04:37** |
| DURATION: | **00:00:00** |
| LANGUAGE: | **SPANISH** |
| PARTICIPANTS: | **LUIS FELIPE RODRIGUEZ AKA VAQUERO** |

*MVM, Inc.*
*(713) 693-3241*                                                                                    2

**[BEGINNING OF MESSAGE]**

A quien le marco para el resibo compita? Toy en la roka

WHO DO I CALL ABOUT THE RECEIPT BUDDY? I AM AT "LA ROKA" (THE ROCK).

**[END OF MESSAGE]**

*MVM, Inc.*
*(713) 693-3241*

| | |
|---|---|
| CASE No: | **MD-11-0055** |
| TARGET No: | **830-758-9348** |
| CALL: | **0821** |
| MONITOR: | **L. DAVILA** |
| TRANSCRIBER: | **M.  RUBIO** |
| OUTGOING: | **830-335-8891** |
| SUBSCRIBER: | **UNKNOWN** |
| LOCATION: | **UNKNOWN** |
| DATE: | **MARCH 23, 2012** |
| TIME: | **12:59:44 - 12:59:44** |
| DURATION: | **00:00:00** |
| LANGUAGE: | **SPANISH** |
| PARTICIPANTS: | **JESUS BALDEMAR SANTILLANA, AKA CHUY** |

*Case No:*   **MD-11-0055**                          *Call No:*   **0821 (LD)/(MR)**

*MVM, Inc.*
*(713) 693-3241*                                                                      2

___

**[BEGINNING OF MESSAGE]**

Que fue compa todavia nada?

WHATs UP BUDDY, STILL NOTHING?

**[END OF MESSAGE]**

*MVM, Inc.*
*(713) 693-3241*
2

[TELEPHONE RINGS]

**[BEGINNING OF CONVERSATION]**

**CHUY:**      HEY, [U/I]?

**VAQUERO:**   HEY, DUDE?

**CHUY:**      HEY.  NO, DUDE. IT CUT OFF RIGHT NOW.  I AM OVER HERE, BY THE "SEGURO" (SOCIAL SECURITY).   WHERE DO I MEET YOU AT?

**VAQUERO:**   HERE... GO TO... COME OVER HERE.  CAN YOU GO TOWARD WHERE THE... THE "MACRO" IS AT?

**CHUY:**      YES.

**VAQUERO:**   OR... OR DO YOU WANT TO COME DOWN...  OR DO YOU WANT TO COME DOWN HERE BECAUSE I AM HERE, ABOUT TO ARRIVE TO... TO "BRAVO?"

**CHUY:**      BUT OVER THERE, INTO THAT NEIGHBORHOOD OR WHAT?

**VAQUERO:**   WELL, YOU CAME OVER HERE ALREADY, RIGHT?

**CHUY:**      NO, I HAVE NOT GONE OVER THERE, DUDE.

**VAQUERO:**   OKAY, LOOK.    JUST LET ME [U/I] THE CAR THAT I HAVE FROM... FROM THERE, MOM'S AND I WILL DROP BY OVER THERE.

**CHUY:**      ALL RIGHT.   GIVE ME A CALL.

**VAQUERO:**   YES, I WILL CALL YOU RIGHT NOW.   RIGHT NOW...   RIGHT NOW... JUST GIVE ME SOME TWENTY (20) MINUTES.

**CHUY:**      ALL RIGHT.

**VAQUERO:**   ALL RIGHT, *BYE*.

**[END OF CONVERSATION]**

**[END OF CALL]**

*Case No:*   **MD-11-0055**

*Call No:*   **1591 (JD)/(MR)**

*MVM, Inc.*
*(713) 693-3241*

2

[TELEPHONE RINGS]

**[BEGINNING OF CONVERSATION]**

**VAQUERO:**  WHAT'S UP?

**CHUY:**  I AM ABOUT TO ARRIVE.  I AM ARRIVING ALREADY.  DON'T WORRY.  IT'S JUST THAT THE TRAIN GOT IN MY WAY.

**VAQUERO:**  [STAMMERS] BUT ARE YOU COMING THROUGH OVER HERE, THE SIDE [STAMMERS] OF...

**CHUY:**  NO.  WAIT...  WAIT ON THE SIDE OF...  ON THE OTHER SIDE OF... OVER HERE AT, BY THE BLACK BRIDGE, BECAUSE I TURNED BACK ALREADY. [BEEP] [U/I].

[VOICES OVERLAP]

**VAQUERO:**  IT'S BETTER IF...

**CHUY:**  ARE YOU GOING TO COME OUT OVER HERE... OVER HERE BY THE CITI MALL [PH]?

**VAQUERO:**  YES, THAT'S RIGHT.  I AM GOING TO COME OUT BY... YEAH BY THE... YES, YES... [ASIDE: BY WHERE?]

**UM:**  [BACKGROUND: BY THE FOUNTAIN.]

**VAQUERO:**  BY THE FOUNTAIN.  OVER HERE BY... BY... BY THE BLACK BRIDGE. YOU GO ALL THE WAY DOWN THE STREET FOR [U/I].

**CHUY:**  OH, ALL RIGHT.  YES, YES.  WELL, THE ONE THAT COMES OVER HERE TO... TO THE OXXO AND EXTRA.

**VAQUERO:**  THAT'S RIGHT.  BEFORE... BEFORE YOU ARRIVE TO THE EXTRA, THERE IS... THERE IS A CHICKEN PLACE.

**CHUY:**  OKAY.

[VOICES OVERLAP]

**VAQUERO:**  A CHICKEN PLACE THAT IS CALLED POLLO MONTERREY.  THERE, I AM GOING TO ARRIVE THERE.

*MVM, Inc.*
*(713) 693-3241*                                                                3

**CHUY:**        OH, ALL RIGHT. YES.   YES, YES.

                        [VOICES OVERLAP]

**VAQUERO:**  WE WILL SEE EACH OTHER THERE RIGHT NOW.

**CHUY:**        ALL RIGHT.

**VAQUERO:**  *BYE.*   [ASIDE: U/I.]

**[END OF CONVERSATION]**

                        **[END OF CALL]**

*MVM, Inc.*
*(713) 693-3241*

| | |
|---|---|
| CASE No: | **MD-11-0055** |
| TARGET No: | **830-758-9348** |
| CALL: | **1596** |
| MONITOR: | **B. TORRES** |
| TRANSCRIBER: | **J. DORIA** |
| INCOMING: | **830-335-8891** |
| SUBSCRIBER: | **UNKNOWN** |
| LOCATION: | **UNKNOWN** |
| DATE: | **APRIL 4, 2012** |
| TIME: | **23:09:49 - 23:10:44** |
| DURATION: | **00:00:55** |
| LANGUAGE: | **SPANISH** |
| PARTICIPANTS: | **LUIS FELIPE RODRIGUEZ, AKA VAQUERO** |
| | **JESUS BALDEMAR SANTILLANA, AKA CHUY** |

*MVM, Inc.*
*(713) 693-3241*                                                                      2

**[BEGINNING OF CONVERSATION]**

**VAQUERO:**  WHAT'S UP?

[BACKGROUND: VOICES]

**CHUY:**        HEY I WAS CALLING YOU LISTEN, CAN YOU COME OVER HERE, TO
                MY MOTHER'S?   WHERE YOU CAME LAST TIME?

**VAQUERO:**  YEAH, NO... I DON'T REMEMBER WHERE.   WHERE... WHERE I WENT
                TO LAST TIME?  [PAUSE] HEY?  [PAUSE] DUDE? HELLO? [PAUSE]
                HEY?

**CHUY:**        YES?

**VAQUERO:**  CAN YOU HEAR ME?

**CHUY:**        [STAMMERS] AT "SCOTT" [PH]...

[PAUSE]

**VAQUERO:**  HEY?  [PAUSE] DUDE.

[VOICES OVERLAP]

**CHUY:**        HELLO?

**VAQUERO:**  DUDE?

**CHUY:**        YES?

**VAQUERO:**  LOOK.   YOU SAID...

[VOICES OVERLAP]

**CHUY:**        OLD MAN.

[VOICES OVERLAP]

**VAQUERO:**  ARE YOU THERE BY THE BLACK BRIDGE?   [PAUSE]   HEY?   [PAUSE]
                OH, [U/I].

**[END OF CONVERSATION]**

*Case No:*   **MD-11-0055**                                    *Call No:*   **1596 (JD)/(MR)**

*MVM, Inc.*
*(713) 693-3241*

3

**[END OF CALL]**

*MVM, Inc.*
*(713) 693-3241*

| | |
|---|---|
| CASE No: | **MD-11-0055** |
| TARGET No: | **830-758-9348** |
| CALL: | **1598** |
| MONITOR: | **B. TORRES** |
| TRANSCRIBER: | **J. DORIA** |
| INCOMING: | **830-335-8891** |
| SUBSCRIBER: | **UNKNOWN** |
| LOCATION: | **UNKNOWN** |
| DATE: | **APRIL 4, 2012** |
| TIME: | **23:27:18 - 23:28:29** |
| DURATION: | **00:01:11** |
| LANGUAGE: | **SPANISH/ENGLISH** |
| PARTICIPANTS: | **LUIS FELIPE RODRIGUEZ, AKA VAQUERO** |
| | **JESUS BALDEMAR SANTILLANA, AKA CHUY** |
| | **UNIDENTIFIED MALE (UM)** |

*MVM, Inc.*
*(713) 693-3241*

| | |
|---|---|
| CASE No: | **MD-11-0055** |
| TARGET No: | **830-758-948** |
| CALL: | **1599** |
| MONITOR: | **B. TORRES** |
| TRANSCRIBER: | **J. DORIA** |
| OUTGOING: | **830-335-8891** |
| SUBSCRIBER: | **UNKNOWN** |
| LOCATION: | **UNKNOWN** |
| DATE: | **APRIL 4, 2012** |
| TIME: | **23:32:56 - 23:33:39** |
| DURATION: | **00:00:43** |
| LANGUAGE: | **SPANISH/ENGLISH** |
| PARTICIPANTS: | **JESUS BALDEMAR SANTILLANA, AKA CHUY** |
| | **LUIS FELIPE RODRIGUEZ, AKA VAQUERO** |

*MVM, Inc.*
*(713) 693-3241*

2

[TELEPHONE RINGS]

**CHUY:**     [ASIDE: "ANTHONY BOURDAIN" [PH]. IT IS ALWAYS PACKED OKAY?]

[BACKGROUND: FEMALE VOICE]

**[BEGINNING OF CONVERSATION]**

**VAQUERO:** HELLO?

**CHUY:**     LOOK OLD MAN, I AM HERE AT THE OXXO BECAUSE I AM NOT GOING TO... AT THE OXXO THAT IS IN FRONT OF CORONA.

**VAQUERO:** UH...

**CHUY:**     WHERE ARE YOU AT? [U/I].

[VOICES OVERLAP]

**VAQUERO:** AT CORONA'S.

**CHUY:**     YES, YES.   AT THE EXTRA... THE EXTRA.

**VAQUERO:** OH, *OKAY, OKAY.*   ALL RIGHT. I WILL DROP BY RIGHT NOW.

**CHUY:**     I AM HERE, PARKED.   I AM ALREADY WAITING FOR YOU.

**VAQUERO:** OKAY.

**[END OF CONVERSATION]**

**[END OF CALL]**

JURY TRIAL, DAY ONE OF TWO, 9/2/2015

1  A    Yes, sir.

2  Q    And -- and you -- you also testified that between December

3  of 2011 and February of 2012 you made six narcotic deliveries;

4  is that correct?

5  A    Yes, sir.

6  Q    And isn't it true that you have never been charged with any

7  criminal offense for that conduct?

8  A    Yes, sir.

9  Q    And you also testified about taking money that -- that was

10  proceeds of drugs and taking it to Mexico; is that correct?

11  A    Yes, sir.

12  Q    And it -- isn't it also true that you were never charged

13  for that conduct?

14  A    Yes, sir.

15  Q    And one of those trips that you did declare involved

16  $275,000; is that correct?

17  A    What was that, sir?

18  Q    One of the pro -- load -- money -- proceeds that you took

19  to Mexico, was -- was it -- it was $275,000; is that --

20  A    Quarter -- quarter of a million dollars, sir.  That went --

21  that went into Piedras Negras.  It was a receipt, sir.

22  Q    And -- and you didn't declare it; is that correct?

23  A    No, sir, I didn't.

24  Q    And you were not charged with bulk cash smuggling or money

25  laundering; is that correct?

1   A     That's correct, sir.

2   Q     Isn't it also true that on May 22nd you pled guilty to

3   possession with intent to distribute meth?  Is that correct?

4   A     Yes, sir.

5   Q     And isn't it true that when you pled guilty, you entered

6   into a plea agreement?  Is that correct?

7   A     Yes, sir.

8   Q     And isn't it true that in the plea agreement the government

9   recommended -- they -- they agreed to recommend the bottom end

10  of the guideline that was calculated?

11  A     What do you mean?

12  Q     Low end of the guideline?

13  A     The low end, yes.

14  Q     Isn't it also true that on Page Ten of that plea -- plea

15  agreement, it had a substantial assistance provision?

16  A     A what, sir?

17  Q     A cooperation provision.

18  A     Yes, sir.

19  Q     And isn't it also true that the agreement provided that

20  even after sentencing, the government would recommend that your

21  sentence be lowered under Rule 35?  Correct?

22  A     On my plea agreement?

23  Q     Yes.

24  A     Nope.  I didn't see that in my plea agreement.

25        (BRIEF PAUSE)

Case 2:14-cr-00139-AM   Document 146   Filed 12/17/19   Page 43 of 50
Case 2:14-cr-00139-AM   Document 131   Filed 06/09/17   Page 77 of 236        77
JURY TRIAL, DAY ONE OF TWO, 9/2/2015

1   Q      (By MR. RIOJAS) May I approach the witness, Your Honor?

2          THE COURT:   You may.

3   Q      (By MR. RIOJAS) Do you recognize this to be your plea

4   agreement?

5   A      Yes, sir.

6   Q      Turning to Page 11 of your plea agreement --

7   A      "If the cooperation is complete --"

8          THE COURT:   Okay, speak loudly.

9          THE WITNESS:   "If the cooperation is complete, then

10  subsequent to sentencing the government agrees to consider

11  whether such cooperation qualifies as substantial assistance,

12  pursuant to FRCRP 35(b) under the policy of the United States

13  Attorney for the Western District of Texas on the filing of a

14  motion for reduction of sentence within the..."

15  Q      (By MR. RIOJAS) So -- so it does have such a provision; is

16  that correct?

17  A      Can you repeat what you just said?

18  Q      It -- it does have such a provision.  You just read it,

19  correct?

20  A      Yes.

21  Q      And it -- it -- isn't it also true that throughout the time

22  that you were involved in -- in this activity you were using

23  oxycodone?

24  A      Not oxycodone, sir.  Hydrocodone.  They're called "narcos."

25  Hydrocodone.

```
 1        (BRIEF PAUSE)

 2   Q     (By MR. RIOJAS) Do you -- do you -- do you recall signing

 3   a -- a plea agreement?

 4   A     I signed something like that -- such as what?

 5   Q     Where you agreed to plead to the -- Count One, conspiracy

 6   to possess with intent to distribute cocaine?

 7   A     Yes.

 8   Q     And before you signed it, you read a factual basis,

 9   correct?  It -- it was read to you, correct?

10   A     Yes.

11   Q     And in that -- in that plea agreement, you admitted that

12   you handled cocaine as part of the conspiracy and delivered

13   cocaine to further the conspiracy?

14   A     Yes.

15   Q     And it -- it involved more than five kilograms, correct?

16   A     What I -- what I did was not.

17   Q     But that's what you were charged with, correct?

18   A     Yes.

19   Q     And -- and when you signed that plea agreement, you also

20   agreed to cooperate with the government, correct?

21   A     Yes.

22   Q     And that's why you're here today?

23   A     Well, yes.

24         (BRIEF PAUSE)

25             MR. RIOJAS:  May I have a second, Your Honor?
```

U.S. Department of Justice
Drug Enforcement Administration

*Feliciano*

| REPORT OF INVESTIGATION | 1. File No. MD-11-0055 | 2. G-DEP Identifier YGC1J |
|---|---|---|
| *(Continuation)* | 3. File Title DE LUNA-Aguilar, Jose Guadalupe | |

| 4. Page 4 of 6 | |
|---|---|
| 5. Program Code HID100 | 6. Date Prepared 08-30-2012 |

19. SA Martinez-Lopez asked ▓▓▓▓▓▓ if ▓▓ had knowledge of Elizabeth meeting with J.SANTILLANA after the May 24, 2012 raids. ▓▓▓▓▓▓ stated that ▓▓ knew that she had met with him on one occasion and then broke off all contact with his family.

20. SA Martinez-Lopez asked ▓▓▓▓▓▓ about ▓▓ relationship with Veronica ALONZO-Martinez. ▓▓▓▓▓▓ stated that ▓▓ did not trust her and believed that she would turn ▓▓ in after the raids.

21. ▓▓▓▓▓▓ further stated that ▓▓ had instructed ▓▓▓▓▓▓ to stop communicating with ALONZO-Martinez.

22. SA Martinez-Lopez asked ▓▓▓▓▓▓ if ▓▓ had knowledge of ALONZO-Martinez meeting with J.SANTILLANA after the May 24, 2012 raids.

23. ▓▓▓▓▓▓ stated that J.SANTILLANA was in love with ALONZO-Martinez and he seen the two of them on several occasions at his mother's house in Piedras Negras, Mexico.

24. SA Martinez-Lopez asked ▓▓▓▓▓▓ if ▓▓ had knowledge of J.SANTILLANA's whereabouts on the day of the raids. ▓▓▓▓▓▓ stated that J.SANTILLANA had been at the home of one of ALONZO-Martinez' brothers.

25. ▓▓▓▓▓▓ further stated that J.SANTILLANA hid in a utility closet during the raid and was later provided with a Red Dodge Pickup, belonging to a brother of ALONZO-Martinez, to flee the area.

26. ▓▓▓▓▓▓ stated that J.SANTILLANA was still driving the same pickup in Piedras Negras, Mexico.

**DEA SENSITIVE**
Drug Enforcement Administration

This report is the property of the Drug Enforcement Administration.
Neither it nor its contents may be disseminated outside the agency to which loaned.

Previous edition dated 8/94 may be used.

U.S. Department of Justice
Drug Enforcement Administration

*Zamora*
*Cooperating*

## REPORT OF INVESTIGATION

Page 1 of 2

| 1. Program Code HID100 | 2. Cross File ☒ | Related Files MD-11-0055 | 3. File No. MD-12-0068 | 4. G-DEP Identifier QOM11 |
|---|---|---|---|---|
| 5. By: Robert Duran, TFO At: Eagle Pass RO | | ☐ ☐ ☐ ☐ | 6. File Title RODRIGUEZ, Luis Felipe | |
| 7. ☐ Closed ☐ Requested Action Completed ☐ Action Requested By: | | ☐ | 8. Date Prepared 07-10-2012 | |
| 9. Other Officers: TFO Ricardo Riojas | | | | |

10. Report Re: Interview of Reynaldo ZAMORA and Acquisition of Exhibit N-2

## DETAILS

1.   Reference is made to all reports of investigation under this case file title and number.

2.   On July 10, 2012, at approximately 1:30 pm, in Del Rio, Texas, Reynaldo ZAMORA (hereafter referred to as Cooperating Defendant/CD) was interviewed regarding his/her knowledge and/or participation in a money laundering operation taking place in Del Rio and Eagle Pass, Texas.  The following is a non-verbatim translation summary of said interview.

3.   The CD was shown a photo line-up, Exhibit N-2, which contained the photo of RODRIGUEZ, Luis Felipe. The CS was able to identify RODRIGUEZ by initialing and placing a date next to the photo. The CS stated that he/she knows him as "H".  Agent's Note:  DEA Agents previously identified RODRIGUEZ as using "H" as one of his aliases.

4.   The CD also stated that RODRIGUEZ is the money laundering boss and that the CD had been working for him.

## CUSTODY OF EVIDENCE

1.   Exhibit N-2:  Identified as a photo line-up containing the photo of RODRIGUEZ, Luis Felipe.  On July 10, 2012, the CD was shown Exhibit N-2 during a interview in Del Rio, Texas, as witnessed by TFO Ricardo Riojas

| 11. Distribution: Division | 12. Signature (Agent) Robert Duran, TFO | 13. Date 07-10-2012 |
|---|---|---|
| District | 14. Approved (Name and Title) Armando Ramirez Jr., RAC | 15. Date 07-13-2012 |
| Other     SARI | | |

DEA Form     - 6
(Jul. 1996)

**DEA SENSITIVE**
Drug Enforcement Administration

This report is the property of the Drug Enforcement Administration.
Neither it nor its contents may be disseminated outside the agency to which loaned.

Previous edition dated 8/94 may be used.

Porras

**Hough, Candace (USATXW)**

| | |
|---|---|
| **From:** | Hulings, Jay (USATXW) |
| **Sent:** | Monday, August 06, 2012 8:45 AM |
| **To:** | Hough, Candace (USATXW) |
| **Subject:** | FW: DEA 6 (CS Initial Debriefing) |
| **Categories:** | Pending - URGENT |

Please open a matter on Luis Felipe Rodriguez and add this email to the file. It's related to the Santillana case, so it may be best to add it to that matter. Thx.

**From:** Duran, Robert [mailto:Robert.Duran@usdoj.gov]
**Sent:** Tuesday, July 31, 2012 4:58 PM
**To:** Hulings, Jay (USATXW); Martinez-Lopez, Daniel (DEA-US)
**Subject:** DEA 6 (CS Initial Debriefing)


DRUG RELATED INFORMATION

1.  Reference is made to all reports of investigation under this case file title and number.

2.  On July 26, 2012, at approximately 10:55 am, in Del Rio, Texas, DEA Confidential Source CS XX-XXXXX, hereafter referred to as the CS, was debriefed regarding his/her knowledge of drug smuggling and money laundering activities taking place in Del Rio and Eagle Pass, Texas.  The following is a non-verbatim translation summary of said debriefing.

3.  The CS stated that he/she had a telephonic conversation with "H", on July 06, 2012. Agent's Note:  DEA Agents previously identified Luis Felipe RODRIGUEZ as using "H" as one of his aliases.  RODRIGUEZ informed the CS that he suspected ███████████████ had done something wrong with the compartment in the Mazda, and that's the reason the load of money was lost (seized by law enforcement).

4.  RODRIGUEZ informed the CS where the compartment was located and how to open it in the Mazda.  RODRIGUEZ informed the CS that the compartments were almost always located near the engine so that the heat of the engine would help hide the compartment.

5.  RODRIGUEZ informed the CS, that the compartments were built in such a way that it should only take the person 15 minutes to load and unload.

6.  RODRIGUEZ then asked the CS to recruit a female to accompany the CS in the vehicle when the CS smuggled drugs and money.  RODRIGUEZ stated that a female companion would make for a better cover story to get through the U.S. Border Patrol check points.

*Phone Cells* *Torras*

U.S. Department of Justice
Drug Enforcement Administration

## REPORT OF INVESTIGATION

Page 1 of 4

| 1. Program Code HID100 | 2. Cross File ☒ | Related Files | 3. File No. MD-12-0068 | 4. G-DEP Identifier QOM1I |
|---|---|---|---|---|
| 5. By: Robert Duran, TFO At Eagle Pass RO | | CS-12-142580 | 6. File Title RODRIGUEZ, Luis Felipe | |
| 7. ☐ Closed ☐ Requested Action Completed ☐ Action Requested By: | | ☐ ☐ ☐ | 8. Date Prepared 11-30-2012 | |

9. Other Officers: RAC Armaondo Ramirez, Jr., TFO Ricardo Riojas, TFA Pedro Govea and SA Daniel Martinez

10. Report Re: CS Debriefing of Debrief of CS-12-142580

### DRUG RELATED INFORMATION

1.  Reference is made to all reports of investigation under this case file title and number.

2.  On October 11, 2012, in Del Rio, Texas, DEA Confidential Source CS-12-142580, hereafter referred to as the CS, was debriefed regarding his/her knowledge of drug smuggling and money laundering activities taking place in Del Rio and Eagle Pass, Texas. The following is a non-verbatim translation summary of said debriefing.

3.  TFA Robert Duran and TFO Ricardo Riojas met with the CS to initiate recorded telephone calls between the target of the investigation (Luis Felipe RODRIGUEZ) and the CS.

4.  On the same date, Agents were informed by the CS that he/she (CS) had damaged the cell phone by accidently getting the phone wet. The CS informed Agents that he/she had been caught in the rain while walking home. TFA Duran then asked the CS if he/she still had the SIM card, to which the CS stated that he/she was still in possession of the SIM card and that it had not been damaged.

5.  At that time TFA Duran requested that the CS retrieve the SIM card and for the CS to place the SIM card in another cellphone. TFA Duran then instructed the CS to make a phone call in the presence of the Agents. The CS' first telephone call was made to TFA Duran's phone. When TFA Duran

| 11. Distribution: Division | 12. Signature (Agent) | 13. Date 11-30-2012 |
|---|---|---|
| District | Robert Duran, TFO | |
| Other  SARI | 14. Approved (Name and Title) /s/ Armando Ramirez Jr., RAC | 15. Date 12-12-2012 |

DEA Form   - 6
(Jul. 1996)

**DEA SENSITIVE**
Drug Enforcement Administration

This report is the property of the Drug Enforcement Administration.
Neither it nor its contents may be disseminated outside the agency to which loaned.

Previous edition dated 8/94 may be used.

U.S. Department of Justice
Drug Enforcement Administration

## REPORT OF INVESTIGATION
*(Continuation)*

| | | |
|---|---|---|
| 1. File No. MD-12-0068 | 2. G-DEP Identifier QOMII | |
| 3. File Title RODRIGUEZ, Luis Felipe | | |
| 4. Page 3 of 4 | | |
| 5. Program Code HIDI00 | 6. Date Prepared 11-30-2012 | |

10.  TFA Duran then informed the CS that he/she was willing to provide him
with an AT&T cellphone. Shortly after the meeting took place TFA Duran
purchased an AT&T cellphone for the CS. The CS was then driven to his/her
residence where the SIM card was located. Once at the residence, the CS
was given 5 minutes to locate the SIM card rejoin the Agents in their
service vehicle. Approximately 10 minutes later the CS informed the Agents
that he/she could not locate the SIM card. The CS looked visibly troubled
and was vomiting while attempting to inform the Agents. The CS was then
informed that he/she needed to locate the SIM card and that RAC Ramirez
was going to be apprised of the situation. The CS was informed that he/she
would be given 45 minutes to locate the SIM card and for the CS to call
the Agents once the card had been located.

11.  On the same date the CS informed Agents that the SIM card had been
lost by another family member he/she was currently residing with. The CS
was informed by TFA Duran that he/she was currently residing with. The CS
license plate number of the vehicle currently being used to provide Agents with the
drugs and money for the target. The CS stated that he/she would be able to
he/she would inform Agents of any contact he/she had with the target. RAC
Ramirez was apprised of what had transpired with the CS.

12.  On October 15, 2012, the CS met with Agents and informed them that
he/she was sure the SIM card was lost and that he/she had not been able to
find the license plate number to the vehicle currently being used by the
driver smuggling for the target.

13.  On October 18, 2012, the CS was advised by TFA Duran that due to
his/her failure to fulfill his/her contractual agreement with the DEA, the
CS was being deactivated.  TFA Duran asked the CS if he/she understood why
his/her (CS') relationship with the DEA was being terminated, to which the
CS stated yes. This meeting was witnessed by TFA Pedro Govea.

## NONDRUG RELATED CRIMINAL INFORMATION

1.  When asked, the CS did not provide any non-drug related criminal
information.

## FINANCIAL INFORMATION

DEA Form        - 6a
(Jul. 1996)

Drug Enforcement Administration

DEA SENSITIVE

This report is the property of the Drug Enforcement Administration.
Neither it nor its contents may be disseminated outside the agency to which loaned.

Previous edition dated 8/94 may be used.

( Legal Mail )

Luis Felipe Rodriguez
#63050-180 L-2
United States Penitentiary
Canaan
P.O. BOX 300
Waymart, P.A.
18472

RECEIVED

DEC 16 2019

CLERK, U.S. DISTRICT CLERK
WESTERN DISTRICT OF TEXAS
BY: _____
DEPUTY

7010 0290 0003 6096 1628



United States District Cou
111 East Broadway, Room L-1
Del Rio, Tx
78840










